## A. D. WILKIE v. NEW YORK MUTUAL LIFE INSURANCE COMPANY.

(Filed 19 February, 1908).

1. **Insurance—Notices—Premiums—Insurance Year—Date of Insurance.**

   When it appears upon the face of a policy of life insurance, and from the notices to insured, that the pay day for premiums was fixed as 22 November, and that the policy was delivered on 2 December, the insurance year begins at the date fixed in the policy as the pay day, or 22 November.

2. **Same—Term—Commencement—Premiums—Payment—Delivery of Policy—Automatically Continued.**

   When the insured has ceased to pay the premiums upon his policy of life insurance, but which, under its terms and condi-

146—33

tions applicable, automatically continued in force for two years and two months, and specifies the pay day for premiums as 22 November, and the policy was delivered to the insured on 2 December following, the time for which the policy will be automatically continued should be computed from the date specified in the policy, and not from the date of its delivery.

3. **Same—Policies—Premiums—Date of Payment—Construction.**

The annual premiums stipulated in the face of a policy of life insurance, to be paid by the insured at a day certain to give the benefits thereunder, are but parts of a fixed total, and are not to be considered strictly as made for a full year, but as payments to be made on a particular day of the year.

4. **Same—Automatically Continued—Time Computed.**

When the insured, under a policy of life insurance, dies within the period for which his policy was automatically continued in force, reckoning from the date of its delivery, but after such time has expired, reckoning from the pay day for the premiums specified in the policy, it would be a variance of the contract to permit a recovery of the benefits set out in the policy.

5. **Same—Delivery—Premiums—Date of Payment—Contract—Evidence—Variance.**

When the policy sued on was delivered subsequently to the day mentioned therein for the payment of premiums, and provided for the payment of twenty annual premiums, from the date mentioned, to regard the day of its delivery as that from which the policy was to run would extend the time beyond that fixed in the face thereof, and would be a variance of the insurance contract.

6. **Same—Days of Grace—Forfeiture—Term of Insurance.**

The thirty days' grace allowed in an insurance policy merely provides against a forfeiture, and cannot be construed to extend the term of insurance limited in the face thereof.

CIVIL ACTION, heard before *Guion, J.,* and a jury, at February Term, 1907, of the Superior Court of RUTHERFORD County.

During the trial the counsel for the parties agreed upon the facts, and judgment was entered thereon for defendant. Plaintiff appealed.

The plaintiff brought this action to recover $2,000, the amount of an insurance policy issued by the defendant upon

the life of her intestate for her benefit. The policy contains
the following provisions:

"1. This policy participates in the profits of the company
as herein provided. If the insured is living on the twenty-
second day of November, nineteen hundred and twenty-one,
which is the end of the twenty-year accumulation period of
this policy, and if the premiums have been duly paid to that
date, and not otherwise, the company will then apportion to
this policy its share of the accumulated profits, and the insured
shall then have the option of one of the following five accumu-
lation benefits." Then follow the five options given to the
beneficiary for the settlement of the policy, all of which are
based, in part, upon a participation in the profits.

"2. At the end of the accumulation period the company
will send to the insured a written statement of the results
under the five accumulation benefits. If a selection by the
insured of one of these benefits is not received by the company
within three months thereafter, it will be assumed that the
insured desires to continue this policy under the first benefit,
and the cash profits apportioned to this policy will be held as
a credit, with interest at such rate per annum as the company
may declare on such funds, and shall be payable as the insured
may direct—in one sum or in not more than ten installments.

"The company guarantees that the entire cash value of this
policy at the end of the accumulation period shall consist of
(first) one thousand and eight dollars ($1,008); (second) the
cash profits then apportioned by the company.

"3. The insured may change the payment of the proceeds of
this policy from payment in one sum, as provided on the first
page hereof, to payment by annual installments, as provided
on the fourth page hereof.

"This policy is automatically nonforfeitable from date of
issue, as follows:

"If any premium is not duly paid, and if there is no in-
debtedness to the company, this policy will be endorsed for the

amount of paid-up insurance specified in column two of the table on the second page hereof, on written request therefor within six months *from the date to which premiums were duly paid.* If no such request is made, the insurance will automatically continue *from said date* for the amount stated at the head of column three of said table ($2,000) for the term specified therein (two years and two months), and no longer.

"4. If this policy is continued beyond the accumulation period, profits shall be apportioned at the end of every five years thereafter, during the continuance of this policy, if all premiums have been duly paid to end of accumulation period.

"5. If any premium is not paid on or before the day when due, or within the month of grace, the liability of the company shall be only as hereinbefore provided for such case.

"6. Any indebtedness to the company, including any balance of the premium for the insurance year remaining unpaid, will be deducted in any settlement of this policy, or of any benefit thereunder.

"7. This policy is incontestable from date of issue.

"8. This agreement is made in consideration of the sum of sixty-three dollars and sixty-six cents, the receipt of which is hereby acknowledged, and of the payment of a like sum on the twenty-second day of November thereafter, in every year during the continuance of this policy, until twenty full years' premiums shall have been paid."

The policy is dated 2 December, 1901. There is endorsed on the policy a notice to the insured and the beneficiary that the insurance under the policy may be collected by direct application to the home office of the company, 346 Broadway, New York City, together with the name of the insured, a statement of the number of the policy, the amount thereof ($2,000), the annual premium, and then the following: "Insurance year begins on November 22d."

The parties waived a trial by jury and agreed upon the following facts:

"1. The policy sued on in this case was issued upon the life of Clarence D. Wilkie.

"2. The premiums due for the first two full years of said policy were paid, but no further premium payments were made upon said policy.

"3. The insured, Clarence D. Wilkie, died on 26 January, 1906.

"If the court is of the opinion that the plaintiff is entitled to recover, then judgment shall be rendered in favor of the plaintiff for $2,000, less the sum of $150.74 unpaid premiums; otherwise, for the defendant."

Proofs of intestate's death were duly made and payment of the insurance demanded of the defendant and refused by it.

The court, being of opinion with the defendant, rendered judgment in accordance with the agreement. The plaintiff excepted and appealed.

*McBrayer, McBrayer & McRorie* for plaintiff.
*Gallert & Carson* for defendant.

WALKER, J., after stating the case: The original policy was filed in this Court for our inspection, and the decision of the case turns upon its true construction. The plaintiff contends that, as the policy was issued on 2 December, 1901, and as the two full premiums for two years had been paid, this carried the insurance to 2 December, 1903, and that by the terms of the contract the insurance was automatically continued from the latter date for two years and two months, which would carry it to 2 February, 1906, and, as the insured died on 26 January, 1906, the policy was in full force and effect at the time of his death. The defendant, on the contrary, insists that the date from which the count of time must be made is 22 November, 1901, according to the stipulations of the contract and the notice to the insured, at the time of the delivery of the policy to him, that the insurance year would begin

22 November, which date, in 1901, was the beginning of the first insurance year; and that, this being so, the insurance, when extended according to the contract, expired 22 January, 1906—just four days before the death of the insured. As between these two contentions, we are with the defendant, and we think, therefore, that the Judge was right in his decision upon the case agreed.

The policy provides that, if no request for paid-up insurance is made, the policy will automatically continue in force for two years and two months from the date to which premiums are duly paid. The question, then, is presented, To what date had premiums been fully paid, under the terms of this policy? Manifestly, as we read the contract, and in view of the law applicable to such cases, to 22 November, 1903.

The premiums were payable in advance, and they had been paid, according to the facts agreed upon, for two full years. In view of the plain language of the policy, it can make no difference that the policy was not issued until 2 December, 1901. We find this provision in the policy: "This agreement is made in consideration of the sum of sixty-three dollars and sixty-six cents, the receipt of which is hereby acknowledged, and of the payment of a like sum on the twenty-second day of November thereafter, in every year during the continuance of this policy, until twenty full years' premiums shall have been paid." It is made perfectly clear that the parties intended to make 22 November the beginning of each insurance year and the date to which the advance premiums should be paid, when the clause just quoted is read in connection with a prior one in the policy, which is as follows: "This policy participates in the profits of the company as herein provided. If the insured is living on the twenty-second day of November, nineteen hundred and twenty-one, which is the end of the twenty-year accumulation period of this policy, and if the premiums have been duly paid to that date, and not otherwise, the company will then apportion to this policy its share of the accu-

mulated profits, and the insured shall then have the option of one of the following five accumulation benefits." It therefore appears that twenty annual premiums were required to be paid for the full time, and 22 November was expressly designated as the day of payment; that date, in the year 1921, was fixed as the end of the "twenty-year accumulation period of the policy"; and it is stipulated that, "if the premiums have been fully paid *to that date,* and not otherwise," the company will *then* apportion to the policy its share of the accumulated profits, with any other benefit to which the insured is entitled. If we accept the contention of the plaintiff that 2 December is the beginning of the insurance year, within the meaning of the parties to this contract, we are met by the positive and clearly inconsistent provision that the full term of the insurance will end 22 November, and that her share of the profits and the benefits under the policy shall then accrue to her as the beneficiary, if the premiums have been paid to that date. This provision is, of course, in conflict with the plaintiff's contention, because, if the insurance became effective 2 December, 1901, and the insurance year was therefore to commence on that date and end on the corresponding date of each and every year thereafter, the full term would thereby be extended, contrary to the express provision of the policy, nine days, at least, beyond the date fixed for its termination. A construction of the policy which will produce such a result is, of course, not admissible. Payment being required in advance, the premium paid when the policy was actually issued would run until the next pay day should come—that is, until 22 November, 1902. The fact that this would be ten days short of a full year from the date of the policy cannot be allowed to affect the case, since payments of premiums, being but parts of a fixed total, are not to be considered strictly as made for a full year, but as payments due on a particular day of the year. This question was directly presented in an action upon a policy worded substantially like the one now being con-

strued, and the Court held that the fact of the policy having been issued and the first premium paid on a day subsequent to the pay day did not change the due date of premiums as fixed by the express words of the contract. *Bryan v. Insurance Co.,* 21 R. I., 149. The same point was similarly decided in *Frazier v. Insurance Co.,* 108 N. W. (Minn.), 819. And so it is said, in May on Insurance (4th Ed.), sec. 400, at page 920: "When the policy itself covers a period antecedent to its date, and does not specify the contingency upon which it shall take effect, the date of the policy, or of its actual delivery, becomes of little or no importance in determining when the insurance takes effect." The intention of the parties to make such a contract as is described in the passage just quoted seems to be apparent in every part of the written policy now under construction.

There is another permissible view of this case, which leads us to the same conclusion we have already reached. The final clause in the policy recites that the insurance contract is made in consideration of the receipt of the first premium ($66.23), "and of the payment of a like sum on 22 November *thereafter,* in every year during the continuance of the policy, until twenty full years' premiums shall have been paid." What does the expression, "in every year during the continuance of the policy," mean? Does it refer to the current year, commencing 2 December, the date of the policy, and the years succeeding, with the same date as their beginning, or does it refer to the succeeding calendar years—that is, to the year 1902 and the calendar years thereafter? Plainly, to the latter, for, if not, and the first construction should prevail, the second premium would fall due, not on 22 November, 1902, but on 22 November, 1903, that being the first day of that date after the full year beginning with 2 December, 1901, had expired, if the latter date is to be taken as the first day of the insurance year and the policy is kept in force, or the premium is in effect paid for a full year

thereafter, or to 2 December, 1902, there being no doubt that the premiums were payable 22 November, for it is so expressly stated in the policy. This would produce a direct conflict with the other explicit terms of the policy, and especially with the one which requires that the term or life of the policy shall expire when twenty full years' premiums shall have been paid, or on 22 November, 1921, as specified in the policy, for then only nineteen premiums would be paid to the latter date. If 2 December is to be taken as the first day of the insurance year, the "twenty-year accumulation period" of the policy would not expire until 2 December, 1921, or ten days after the time so clearly designated in the contract.

But the policy further provides that the insurance will continue automatically for two years and two months from the date to which premiums have been duly paid. This necessarily means the date when the premium which has not been paid falls due by the terms of the contract of insurance. The policy designates 22 November as the day of payment. There can be no mistake as to this being the fact. By what rule of construction applicable to any kind of instrument—will, deed or contract—can we change that date and substitute another later in the year, simply because the policy was delivered and the premium paid on the latter date? That would be making a contract for the parties, which we are forbidden to do, and not merely construing one they have made for themselves. "The intention of the parties must be collected from the whole instrument and not from any detached portion of it, and greater regard is to be paid to their clear intent than to any particular form of words or to the phraseology by which they have undertaken to express it." Clark on Contracts (2d Ed.), pp. 402, 403 *et seq.* It is true that words in a contract are to be construed against the party using them, if there is any ambiguity, and this rule applies with special force to insurance policies, which will receive that interpretation, in cases of doubt, which is most favorable to the assured. *Bray v.*

*Insurance Co.,* 139 N. C., 390.    But all instruments should
be construed reasonably, and, where the intention of the par-
ties clearly appears, a contract will be interpreted so as to
effectuate it.    We are of the opinion, after a careful examina-
tion of the terms of this policy, that it was intended that the
second premium should be paid on 22 November, 1902, and
the others in succession on the same date of each year there-
after, until the full accumulation period of twenty years had
expired.    Any other construction would annul the plainly ex-
pressed provisions of the contract, subvert the leading idea of
the parties in making the agreement, and destroy the computa-
tion adopted for adjusting and settling the rights and benefits
accruing to the assured at the time unmistakably fixed by the
policy.    We find that there are many decisions sustaining our
view, a few of which we will cite: *Tibbitts v. Insurance Co.,*
159 Ind., 671; *Thomas v. Insurance Co.,* 142 California, 79;
*Johnson v. Insurance Co.,* 143 Fed., 950; *Frazier v. In-
surance Co.,* 108 N. W., 819; *Methvin v. Life Association,*
129 California, 251; *McConnell v. Providence Savings So-
ciety,* 92 Fed., 769; *Insurance Co. v. Patterson,* 28
Ind., 17.

We have not referred to the fact that the insured, Clarence
Wilkie, accepted the policy with notice from the defendant of
the initial day of each insurance year, because we have not
found it necessary to do so in order to arrive at a conclusion
as to the proper meaning of the contract.    If he was thus
notified, it would seem to have been nothing but right to
return the policy if it was the wrong date, and refuse to accept
another unless it conformed to the terms of the application
made to the company.

Passing to another point, it is true that thirty days of grace
are allowed for the payment of any premium, if it should not
be paid the day it is due.    In *Insurance Co. v. Meinert,* 199
U. S., at p. 179, *Justice Peckham,* for the Court, says:
"There can be no doubt that the premium did become due on

the 5th of March, and the thirty days' extension simply permitted a payment within that time to save a forfeiture." It did not change the due date of the premium, but was no more than an act of grace or favor on the part of the company to the insured. When a premium is paid, the date to which it is paid, within the meaning of the policy, is the day on which the next premium will be due, as fixed by the terms of the contract, and this was 22 November, as we have said. The clause allowing days of grace was inserted merely to prevent a forfeiture by extending the time of payment, and the additional period, or the time of the extension, is not covered by the last premium paid. If there had been a default in payment on the day named in the contract, and the premium should thereafter have been paid within the thirty days of grace, it would have saved the insurance; but if the days of grace should be given the effect of adding thirty days to the insurance year, instead of merely preventing a forfeiture, there would necessarily follow a disarrangement of the entire scheme of insurance, as evidenced by the policy. This is made clear, too, by the very terms of this policy, distinguishing between the due date and the day upon which the extension of credit or time of grace expires, and requiring interest to be paid for the time of extension. The distinction is also recognized in the following clause of the policy: "If any premium is not paid on or before the day when due, or within the month of grace, the liability of the company shall be only as hereinbefore provided for such a case." Each premium, therefore, is paid to the next due date, and not to the day on which the month of grace may end.

The plaintiff relied mainly on *McMaster v. Insurance Co.,* 183 U. S., 25, but that case will be found, upon examination, to be materially different from the case at bar in several respects. One essential difference is that the company alleged that the policies of McMaster were dated 12 December, 1893, which was the day he agreed should be the first of the insur-

ance year, when, in fact, they were dated 18 December, 1893, the day on which they were actually issued, and the application of McMaster for the insurance expressly stated that they should not be in force until actual payment and acceptance of the premiums; and it further appeared that it had been orally agreed between the company's agent and McMaster that the premiums should be payable annually—that is, at the end of each insurance year, which, by the terms of the application, commenced with 18 December, 1893. The Court held that McMaster was not estopped to show these facts by reason, even, of the explicit requirement of the policy that the premiums should be paid 12 December of each year, as the day of payment had been antedated by the fraud of the company's agent, and in violation of the agreement. It further appeared that the agent represented to McMaster that the payment of a year's premium in full would secure to him a contract of insurance for thirteen months from the payment of the premium. The Court, in discussing this feature of the case, said, by *Chief Justice Fuller:* "We are dealing purely with the question of forfeitures," and it was accordingly held that, as the payment of the first premiums insured McMaster for thirteen months by virtue of his agreement with the agent, by which the company was bound, the next premium was not due until 18 December, 1894, and, as McMaster died 18 January, 1895, within the month of grace, the policies were in force at the time of his death, and the plaintiff was entitled to recover. The two cases are radically different. One involved simply the question of forfeiture, and was dependent for its decision upon the alleged agreement and fraud of the company's agent in connection with the terms of the application, all of the facts upon these controverted matters having been found in favor of the plaintiff; while in our case the application was not in evidence, and there was no agreement established between the agent and the insured which altered the contract, as expressed in the policy. There are other dif-

ferences, more or less important, but which need not be noticed. Indeed, we think that the reasoning of the learned Chief Justice in that case clearly sustains our construction of the policy upon which this suit was brought.

Besides the cases we have cited in support of our rulings, a recent decision upon facts substantially identical with those in this case sustains our view of the law. *Insurance Co. v. Stegall,* 58 S. E. Rep. (Ga.), 79.

The policy of the plaintiff's intestate was not in force at the time of his death, and the court below, therefore, rendered the proper judgment upon the case agreed.

Affirmed.