## BLUMBERG *v.* UNITED BENEFIT LIFE INSURANCE COMPANY

[No. 89, September Term, 1958.]

*Decided February 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Eugene Schonfield* and *Simon Schonfield,* with whom were *Schonfield & Schonfield* and *Harold I. Witman* on the brief, for appellant.

*William A. Fisher, Jr.,* with whom were *William D. Mac-millan* and *Semmes, Bowen & Semmes* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

When the United Benefit Life Insurance Company (the insurer), of Omaha, Nebraska, refused to pay Jane Blumberg (the beneficiary) the amount she claimed was due her under the policy of insurance issued by the insurer on the life of Preston Blumberg (the insured), who was the deceased husband of the beneficiary, she brought suit against the insurer in the Superior Court of Baltimore City. The court, sitting without a jury, entered a judgment in favor of the insurer for costs, and the beneficiary appealed.

The policy, which was issued May 12, 1949, had a face value of $2500 and provided for a quarter-annual premium of $16.63, payable on the date of issue and each quarter

thereafter. The premiums were paid regularly until August 12, 1955, when the insured secured a loan on the policy, and thereafter paid the premiums regularly until February 12, 1956. When the premium due on that date was not paid at the end of the grace period, the insurer advanced the premium under the automatic premium loan provision in the policy.

The next quarterly premium became due on May 12, 1956. This also was not paid. Since the remaining cash value of the policy on that date was only $4.74, it was impossible for the insurer to advance another premium. Instead, the insurer, in accordance with the terms of the policy, used the $4.74 to purchase $2250 of extended term insurance for a ninety-two day period.

The insured died on September 2, 1956. The beneficiary contends the ninety-two day period began on June 13, 1956, which was the end of the thirty-one day *grace period*. The insurer contends the ninety-two day period began on May 12, 1956, which was the date on which the premium *was due*. If the beneficiary's contention is correct, the extended term insurance would not have expired until September 13, 1956, and she would be entitled to the proceeds of the policy. On the other hand, if the insurer is correct, the extended term insurance expired on August 12, 1956, and the beneficiary would be entitled to nothing. The sole question then is: On what date did the ninety-two day extended term insurance begin to run?

Since a decision depends upon an interpretation of the language used in the insurance contract, we set forth below the pertinent provisions of the policy:

> "Clause 2—Manner of Payment—* * * The payment of any premium or installment thereof shall not maintain the policy in force beyond the *due date* of the next premium or installment, except as provided herein."

> * * *

> "Clause 4—Grace Period—A *grace period* of thirty-one days will be granted for the payment of every premium or installment thereof after the first,

during which time this policy shall remain in force; provided, however, that if death occurs within the *grace period,* the premium or installment due during such *grace period* will be deducted from the amount payable."

\* \* \*

"Clause 21—Options—After premiums have been paid for the number of years for which a cash value is first shown in Table C, the Insured may, upon default in the payment of a premium or within sixty days after the *due date* of a premium in default, select one of the following options:

\* \* \*

"Third Option—Extended Insurance—The policy may be continued as extended term insurance for the face amount less the amount of any indebtedness and for such period from the *due date* of the premium in default as the cash value less indebtedness will purchase as a net single premium for term insurance at the then attained age of the Insured according to the mortality table and rate of interest specified below.

"Automatic Option—If no option has been selected within sixty days after the due date of a premium in default the extended insurance option shall be automatically effective from said *due date."* (Emphasis added.)

Thus the policy provided two safeguards for an unwary insured. First there was a grace period of thirty-one days during which the insurance remained in force. During the grace period the insured could still pay premiums without a forfeiture of the policy. However, the new term started from the due date, and if the insured died during the grace period the premium or installment due during such period would be deducted from the amount payable under the policy. The other safeguard consists of extended term insurance which merely means that the cash value of the policy, less indebtedness, is applied to continue the policy in force for

such further term as that amount will purchase. 3 Appleman *Insurance Law and Practice* § 1911 (1941).

There is no doubt that the expiration of the grace period was thirty-one days after the due date. And, according to the automatic option provision of the policy, the extended term insurance was also *effective from the due date,* that is, from May 12, 1956. For this reason we think it is clear from the plain terms of the policy that the insured was not covered by the extended term insurance on the date of his death— September 2, 1956—since the cash value of the policy on the due date of the premium would only buy insurance for ninety-two days from May 12, 1956, or until August 12, 1956.

While a decision on the question with which we are here concerned must always depend on the provisions of the disputed policy in each case, a vast majority of the cases that have construed similar provisions support the decision we have indicated here. In Vance *Insurance* § 99 (3rd ed. 1951) it is stated:

> "Almost invariably the policies specifically provide that the extended insurance shall commence as of the due date of the premium in default and the courts agree that any such stipulation is valid and will be enforced. However, if the policy is ambiguous on this point, the extended insurance may be held to be effective from some later date, thereby giving the insured added coverage."

In 3 Appleman *op. cit., supra,* § 1953 it is said:

> "It is held by the better rule that the grace period does not extend the running of the extended insurance, as the premiums are only paid to the time of default and not to the end of such grace period. The period of concurrent insurance and the grace period are, rather, considered to run concurrently. Consequently, the period of extended insurance is computed from the date of default, and not from the end of the grace period. This means, simply, that the date on which the last premium was due which was unpaid determines the beginning of such period."

See also *Grattan v. Prudential Ins. Co.*, 98 Minn. 491, 108 N. W. 821 (1906); *Wilkie v. New York Life Ins. Co.*, 146 N. C. 513, 60 S. E. 427 (1908); *Shira v. New York Life Ins. Co.*, 90 F. 2d 953 (10th Cir., 1937); *Chilimidos v. Metropolitan Life Ins. Co.*, 93 F. Supp. 50 (D. C. Mass., 1950); 3 Couch *Cyclopedia of Insurance Law* § 648 (1929); 106 A. L. R. 1276 (1937); 45 C. J. S. *Insurance* § 638 e (2).

The only Maryland case we have been referred to concerning extended term insurance—*Prudential Ins. Co. v. Devoe*, 98 Md. 584, 56 A. 809 (1904)—is relied on by the beneficiary to support her contention that the extended term insurance starts at the end of the grace period, but it is clearly distinguishable from the case at bar. There the policy provided for a one month grace period and also provided that "[i]f the policy, after being in force one full year, shall lapse for non-payment of premium the company will continue in force the insurance under the policy for a period of sixty days *from the date of the lapse.*" (Emphasis added.) It was clear, as we there held, that the insurance continued for sixty days from the date of the lapse which was at the end of the grace period. But here the extended term insurance started at the due date and not after the policy had lapsed.

The beneficiary also cites *Mitchell v. Southern Union Life Ins. Co.*, 218 S. W. 586 (Tex. Civ. App., 1920), as a case in point, but it is not. In that case the policy provided that "[i]f the premium has not been paid within the period of grace * * * the insurance will automatically continue as term insurance" in accordance with the policy provisions. It did not provide, however, as does the policy in the instant case, that the extended term insurance would be effective *only* from the due date. And see *Missouri State Life Ins. Co. v. Carey*, 276 S. W. 227 (Tex. Comm. App., 1925), a later Texas case, in which the *Mitchell* case was also distinguished.

As previously indicated, we hold that the extended term insurance began to run from the due date and not at the end of the grace period. This position is supported by the definition of the term "due date" contained in Code (1957) Art. 48A § 156 which states: "In this article: * * * (e) *'Due*

*date of premium'* means the date specified in the policy or contract when any premium will be due and payable, without regard to any applicable grace period."

The judgment of the trial court must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*