KOPPERS COMPANY, INC., Plaintiff v. KAISER ALUMINUM AND CHEMICAL CORPORATION, Defendant and FIRST COLBERT NATIONAL BANK, Additional Defendant

No. 7013SC391

(Filed 5 August 1970)

1. **Process § 14— service on foreign corporation — contract to be performed in this State — assignee of contract**

    A contract between a Delaware corporation and a Georgia contractor for the construction of railroad sidings at the corporation's plant in North Carolina is a contract "to be performed in this State" within the meaning of the statute authorizing service of process on foreign corporations, and the contractor is subject to the jurisdiction of the courts of this State; however, the assignee of the contract proceeds, an Alabama bank, was not subject to the courts' jurisdiction under the contract, where the assignee was not a party to the contract and had incurred no duties or liabilities thereunder. G.S. 55-145(a)(1).

2. **Assignments § 4— effect of assignment — duties imposed by the contract**

    An assignment of a contract does not operate to cast upon the assignee the duties and obligations or the liabilities imposed by the contract on the assignor, in the absence of the assignee's assumption of such liabilities.

3. **Contracts § 2— nature and effect of promises not to be performed except on happening of stated events**

    Promises not to be performed except upon the happening of stated events, whether the events be called a contingency or the time of performance, cannot be the basis of a contract.

4. **Contracts § 12— construction of contract**

    A contract must be viewed from its four corners.

5. **Contracts § 12— construction of contract — rules of construction**

    Where an Alabama bank, in a letter to a Delaware corporation, offered to use funds owing from the corporation to the bank's customer for the purpose of liquidating the customer's debts, the language of the letter must be given such a construction as the bank, at the time the letter was written, should have supposed the corporation would give it, or as the corporation was justified in giving it.

6. **Contracts § 12— construction of contract — words capable of more than one meaning**

    If the words employed in a contract are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have.

7. **Contracts § 12— construction of ambiguity**

    An ambiguity in a written contract is to be inclined against the party who prepared the writing.

8. **Contracts § 2— offer and acceptance — compliance with terms of offer**

   Where a bank, in a letter to a corporation, offered to use funds owing from the corporation to the bank's customer under a construction contract for the liquidation of the contractor's debts, the corporation's release of the funds to the bank constituted its acceptance and created a contract binding the bank to perform as promised.

9. **Contracts § 2— acceptance of offer — performance or nonperformance of act**

   Where the offer so provides, it may be accepted by performing or refraining from performing a specified act.

10. **Contracts § 2— acceptance of offer by act or payment**

    An acceptance of an offer may be by act, as where an offer is made that the offeror will pay or do something else if the offeree shall do a particular thing.

11. **Payment § 1— payment of debt — place of payment**

    In the absence of any agreement or stipulation to the contrary, a debt is payable at the place where the creditor resides, or at his place of business if he has one.

12. **Payment § 1— place of payment**

    Where a Delaware corporation and an Alabama bank entered into a contract whereby the bank agreed to use funds owing from the corporation to a construction company for purpose of liquidating the construction company's debts to its creditors, all of whom were located in North Carolina, the payments of the debts were to be made in North Carolina, where the letter failed to state where the creditors would be paid.

13. **Process § 14— service on foreign corporation**

    Where a Delaware corporation and an Alabama bank entered into a contract whereby the bank agreed to use funds owing from the corporation to the bank's customer for purpose of liquidating the customer's debts to its North Carolina creditors, the contract was "to be performed in this State" within the meaning of the statute authorizing service of process on foreign corporations; consequently, the bank was amenable to the jurisdiction of the courts of this State in the manufacturer's cross-action to recover the funds, which had been applied by the bank to its own debts.

14. **Constitutional Law § 24; Process § 14— requisites of due process — subjecting foreign defendant to in personam judgment — minimum contacts**

    Due process requires only that in order to subject a defendant to judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice; but it remains essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.

15. **Process § 14— service on foreign defendant — claims of immunity from suit — lien laws**

  Where an Alabama bank through a contract with a Delaware corporation voluntarily inserted itself directly into the North Carolina affairs of its customer, a construction contractor, by stepping into the customer's shoes and agreeing to pay the debts owed by the customer to its North Carolina creditors—provided that the manufacturer released to the bank funds owing to the contractor for construction work— the bank cannot now say that it has any more immunity from a suit in North Carolina arising out of its undertaking than that enjoyed by its customer, especially where the funds released by the manufacturer were held pursuant to the lien laws of North Carolina. G.S. 44-9.

16. **Constitutional Law § 24— due process — service on foreign corporation**

  Where a Delaware corporation and an Alabama bank entered into a contract whereby the bank agreed to use funds owing from the corporation to the bank's customer for purpose of liquidating the customer's debts to its North Carolina creditors, the contract was "to be performed in this State" within the meaning of the statute authorizing service of process on foreign corporations; subjecting the bank to the jurisdiction of the North Carolina courts does not offend the traditional notions of fair play and substantial justice nor does it violate the due process clause of the Federal Constitution.

APPEAL by additional defendant from *Tillery, J.,* March 1970 Civil Session of Superior Court for COLUMBUS County.

Plaintiff Koppers Company, Inc. (Koppers) and the original defendant, Kaiser Aluminum and Chemical Corporation (Kaiser), are Delaware corporations. Both are transacting business in North Carolina and both maintain "usual places of business" here. The additional defendant, First Colbert National Bank (Bank), has its usual place of business in the State of Alabama.

Koppers instituted this action on 11 July 1969 seeking to enforce a lien for materials furnished a contractor and used in the construction of certain railroad sidings for Kaiser at Kaiser's Acme, North Carolina, plant. The contractor, Southeastern Railroad Construction and Maintenance Company (Contractor), is alleged to be a partnership with the partners domiciled in the State of Georgia. The complaint alleges that Kaiser surrendered funds owed to the Contractor after having been notified of Koppers' claim pursuant to G.S. 44-9. Kaiser alleges in a cross action against the Bank that it released the funds due the Contractor to the Bank upon representation by the Bank that it would liquidate the Contractor's debts arising out of the work performed for Kaiser in North Carolina, and

that the Bank refused to apply the funds as agreed, applying them instead to a debt owed the Bank by the Contractor. Upon motion by Kaiser, the Bank was made a party defendant and process was served on it in the manner provided by G.S. 55-146 for service of process on foreign corporations.  Kaiser seeks through its cross action to recover the funds released to the Bank so that they may be used to satisfy any judgment obtained by Koppers in this action.

Before time for answering had expired the Bank moved that the cross action be dismissed on the grounds that: (1) As a foreign corporation it is not amenable to service of process under G.S. 55-145 for that it has insufficient "ties or connections" with this state to subject it to this state's jurisdiction and (2) G.S. 55-145 is unconstitutional insofar as it purports to authorize service of process on the Bank.

The written motion, which contains no factual allegations, was not verified and it does not appear from the record that the Bank presented any affidavit or other evidence in support of its motion. The motion was heard, however, upon the verified pleadings and an uncontradicted affidavit offered by Kaiser. At the conclusion of the hearing, the court found facts, made conclusions and denied the motion. This appeal followed.

*Hogue, Hill and Rowe by C. D. Hogue, Jr., for defendant appellee Kaiser Aluminum and Chemical Corporation.*

*D. Jack Hooks for additional defendant First Colbert National Bank.*

GRAHAM, J.

Appellant is a banking corporation with its principal place of business in the State of Alabama. The only connection it has ever had with the State of North Carolina, insofar as the record shows, arose out of the following:

In October 1967 Kaiser entered a contract with Southeastern Construction and Maintenance Company (Contractor), for the construction of certain railroad sidings at Kaiser's Acme Plant in Columbus County, North Carolina. The contract provided in part: "Both parties to this contract hereby accepts [sic] the assignment of this contract by the Contractor to the First Colbert National Bank and agrees [sic] that the money to become due and paid to the Contractor, will be paid by check

made jointly to the Contractor and the First Colbert National Bank and mailed or delivered by Kaiser Agricultural Chemicals to the First Colbert National Bank in lieu of payment thereof to the said contractor."

During the performance of the contract, the Contractor defaulted on various accounts arising out of the work performed, including the account owed to Koppers for materials furnished. On 17 July 1968, appellant's president wrote to an official of Kaiser at its Savannah, Georgia location requesting the release of money owed by Kaiser to the Contractor. The letter is as follows:

"Mr. D. R. Martin
130 East Bay Street
Savannah, Georgia 31402

Dear Ray:

Confirming our telephone conversation of July 16, 1968, providing Kaiser releases the $14,000.00 plus check due David Waldrep's plant, [Contractor] Our bank will assist his firm to the fullest extent possible in order to see that all creditors are paid on a basis which we, at present, deem appropriate. Furthermore, our bank will take assignments on other work which his firm has either completed or is in the process of completing and an assignment on all other contracts which he might enter into subsequent to this date in order to assure further payments to the creditors.

The following is a list of known creditors and said proposition to liquidate the indebtedness from the Kaiser check and from another check at Clyco in the approximate amount of $4,300.00 and miscellaneous contracts making up the difference;

| Creditor | Amount Due | First Liquidation |
|---|---|---|
| L. B. Foster | $16,644.37 | $10,000.00 |
| Koppers | 7,222.79 | 4,000.00 |
| State of N. C. | 1,000.00 | 1,000.00 |
| J. H. Huffan Contractors | 1,200.00 | 1,200.00 |
| Superior Stone | 2,685.85 | 2,685.85 |
| Hanover | 111.10 | 111.10 |
| Hyman | 1,100.00 | 1,100.00 |
| A. D. Stewart | 166.02 | 166.02 |

Koppers Co., Inc. v. Chemical Corp.

| Creditor | Amount Due | First Liquidation |
|---|---|---|
| E. G. Dale | 99.45 | 99.45 |
| Konig Hardware | 66.00 | 66.00 |
| Kaiser | 2,483.00 | |
| Demurge | 675.00 | |
| Unloading | 474.53 | |

| Creditor | Second Liquidation | Third Liquidation |
|---|---|---|
| L. B. Foster | $ 2,000.00 | $ 4,644.37 |
| Koppers | 3,222.79 | |
| Kaiser | | 2,483.00 |
| Demurge | | 675.00 |
| Unloading | | 474.53 |

From the records available to our bank the first liquidation would be handled within two weeks from date of receipt of the $14,000.00 check and the $4,300.00 check and other checking funds available. The second liquidation would be handled from the net profits of a contract already signed involving the Reynolds plant here at Sheffield and the third liquidation would have to be handled from contracts which have not yet been awarded. We will monitor the affairs of this company in the very best manner that we can in order to see that the above creditors are satisfied and it might be wise for you to converse with some of these creditors along the lines which we mentioned in our telephone conversation. You may feel free to send a copy of this letter to anyone you deem necessary. David Waldrep is a fine, hard working and honest young man and we are doing all we can to see him through. Your cooperation in the matter is greatly appreciated.

> Very truly yours,
> s/ F. E. Draper
> F. E. Draper"

In response to the above letter, and in reliance upon the representations contained therein, Kaiser released to appellant the sum of $14,375.13, being the final amount owed by Kaiser to the Contractor.

Based on evidence of the transactions set forth above, the court found facts and concluded that the cross action asserted against appellant arose out of a contract having a substantial

connection with the State of North Carolina and to be performed to a substantial degree within the State, and that appellant is subject to suit in this State under the terms and provisions of G.S. 55-145.

At no time has it been contended that appellant is subject to the jurisdiction of this State as a result of having transacted business here within the meaning of G.S. 55-144. Nor has it been contended that appellant is properly before the court as a result of engaging in any activities delineated in G.S. 55-145, other than those specified in subparagraph (a)(1) thereof. Therefore, the only statutory provision pertinent to this appeal is G.S. 55-145(a)(1) which provides as follows:

> "(a)   Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
>
> (1)   Out of any contract made in this State or to be performed in this State; . . ."

The initial question is whether the cross action asserted by Kaiser arises "out of any contract made in this State or to be performed in this State" within the meaning of G.S. 55-145(a)(1). Since there was no evidence presented and no finding made that any contract forming the basis of this litigation was made in North Carolina, our inquiry is limited to the issue of "performance within this State."

[1, 2]   We first look to the contract between Kaiser and the Contractor. This contract was to be substantially performed in this State within the meaning of the interpretation placed on G.S. 55-145(a)(1) by previous decisions. *Byham v. House Corp.*, 265 N.C. 50, 143 S.E. 2d 225; *Crabtree v. Coats & Burchard Co.*, 7 N.C. App. 624, 173 S.E. 2d 473. Conceding, however, that the contact provided by the contract between the Contractor and this State was sufficient to subject the Contractor to the jurisdiction of this State's courts, it does not follow that it would bring appellant, as assignee of the proceeds thereunder, within their jurisdiction. We think it clear that the operation of G.S.

55-145(a)(1) is limited to situations where the foreign defendant against whom a cause of action is asserted is a party to the contract forming the basis of jurisdiction. "It is a general principle that an assignment of a contract does not operate to cast upon the assignee the duties and obligations or the liabilities imposed by the contract on the assignor, in the absence of the assignee's assumption of such liabilities." 6 Am. Jur. 2d, Assignments, § 109. Appellant was not a party to the contract between Kaiser and the Contractor. Under the terms of that contract appellant incurred no obligation to Kaiser and had no duties to perform. In our opinion that contract affords no basis for jurisdiction.

[3-7] We turn now to the relationship initiated between Kaiser and appellant by appellant's letter. Some of the language contained in the letter is obviously illusory. In one sense it can be argued that the letter constitutes simply a promise to assist the Contractor in liquidating its debts upon the happening of certain contingencies outside the control of appellant, i.e., a realization of profit from certain of Contractor's contracts, and the assignment of contracts not yet awarded. Promises not to be performed except upon the happening of stated events, whether the events be called a contingency or the time of performance, cannot be the basis of a contract. *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906. However, the agreement, as embodied in the letter, must be viewed from its four corners. *Jones v. Realty Co., supra.* The language of the letter must be given such a construction as appellant, at the time it was written, should have supposed Kaiser would give to it, or as Kaiser was fairly justified in giving to it. See 17 Am. Jur. 2d, *Contracts,* § 248, p. 641. " 'If the words employed are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have.' *King v. Davis,* 190 N.C., 737, 130 S.E., 707. It is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing. *Wilkie v. Ins. Co.,* 146 N.C., 513, 60 S.E., 427." *Jones v. Realty Co., supra,* at p. 305.

[8-10] Following these rules of construction, we are of the opinion that appellant's letter constituted an unconditional offer to use the funds in question, along with other funds *then* available, to complete the first proposed liquidation of the Contractor's debts. All of the Kaiser funds were to be used in

the first liquidation. A fair construction of the terms of the letter is that other funds needed to complete the first liquidation were already on hand or unconditionally forthcoming. "[S]aid proposition to liquidate the indebtedness from the Kaiser check and from another check at Clyco in the approximate amount of $4,300.00 and miscellaneous contracts making up the difference; . . . From the records available to our bank the first liquidation would be handled within two weeks from date of receipt of the $14,000.00 check and the $4,300.00 check and other checking funds available." It is therefore immaterial that the second and third proposed liquidations depended upon the happening of future events, for appellant's offer with respect to the use of the Kaiser funds was unconditional. Kaiser's release of the funds, as requested in appellant's letter, constituted its acceptance and created a contract binding appellant to perform as promised. "Where the offer so provides, it may be accepted by performing or refraining from performing a specified act. An acceptance of an offer may be by act, as where an offer is made that the offerer will pay or do something else, if the offeree shall do a particular thing." 17 C.J.S., Contracts, § 41(d), p. 668. See also 17 Am. Jur. 2d, Contracts, § 45; 1 Williston on Contracts, 3d Ed., § 65.

[11-13] Once appellant's offer was accepted by Kaiser, the sole performance called for under the contract was the payment of the funds by the Bank to the Contractor's creditors as set forth in the liquidation schedule. The trial court found that all of the creditors were located in North Carolina; that they were to be paid in North Carolina; and that the debts arose out of work performed in North Carolina. These findings are fully supported by evidence. The only contention made by appellant with respect to any of these findings is that since its letter did not say where payment was to be made, it should be inferred that the creditors would be paid in the State of Alabama. We reject such an inference as inconsistent with the well established principle that ". . . in the absence of any agreement or stipulation to the contrary, a debt is payable at the place where the creditor resides, or at his place of business, if he has one, . . ." 70 C.J.S., Payment, § 6, p. 217. Our conclusion is that the cause of action alleged by Kaiser arises out of a contract to be performed in North Carolina within the meaning of G.S. 55-145(a)(1). Findings and conclusions made by the trial court to this effect support its order denying appellant's motion to dismiss.

A final question arises; namely, does the exercise of jurisdiction under circumstances here presented, though appropriate under the statute, violate the due process clause of the Federal Constitution?

[14] It has been consistently held, since the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95, that " 'due process requires only that in order to subject a defendant to judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "the traditional notions of fair play and substantial justice." ' " *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed. 2d 223; see *Byham v. House Corp., supra,* and cases therein cited. But it remains essential in each case ". . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U. S. 235, 78 S. Ct. 1228, 2 L.Ed. 2d 1283.

[15] Here, appellant through the contract arising out of its letter to Kaiser, inserted itself directly into the North Carolina affairs of its customer, the Contractor, by stepping into its shoes and agreeing to pay the debts owed by the Contractor under North Carolina law. Having voluntarily assumed this role, appellant cannot now say that it has any more immunity from a suit in this State arising out of its undertaking than that enjoyed by its customer. The obligations to North Carolina creditors arose while the Contractor for whom appellant undertook to act was enjoying the protection of the laws of North Carolina. The funds which appellant induced Kaiser to release outside this State's jurisdiction were being held pursuant to this State's lien laws as a result of notice given Kaiser by Koppers pursuant to G.S. 44-9. Appellant's inducement of Kaiser to release the funds frustrated the natural operation of this State's laws with respect to the funds. Appellant was aware, or certainly should have been aware, that unless it fulfilled its contractural obligation, its activity in obtaining the release of the funds from this State would substantially affect the rights of creditors within North Carolina and the right of Kaiser to avoid liability for payment of the North Carolina debts of appellant's customer as imposed by the lien laws of this State.

[16] The entire circumstances are such that to hold that appellant is not subject to the jurisdiction of this State would, in our opinion, offend "the traditional notions of fair play and substantial justice." We are of the opinion, and so hold, that no violation of appellant's constitutional rights has been shown.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.