FERGUSON, Judge.
This appeal is brought from an order adjudging defendant Conger indebted to plaintiff Deimel for $26,481.55 in commissions and interest.
The parties entered into an oral agreement in March, 1973 by terms of which Conger would write a group policy procured by Deimel and would pay Deimel a 10% commission on a monthly basis, i.e., within sixty days of the date the premium was received by Conger.[1] Deimel had continuing obligations, pursuant to the agreement, to pick up the premium checks from the insured group, deliver them to Conger, and act as an intermediary between the insured and Conger. The agreement contemplated the payment of an additional 5% in commissions in the event the experience with the insured group was good. The parties agree that the experience proved to be poor. Nonetheless, the parties’ contract was renewed annually on the original terms for several years. In December, 1977 Conger decided to increase the premium to the group by 25% and to reduce Deimel’s commissions to 5% — both to become effective with the March, 1978 renewal. In 1978, Deimel, with Conger’s approval, looked around for another insurance carrier to take over the policy. Of the twenty to thirty companies contacted, only one agreed to carry the policy; however, the insured group decided to remain with Conger. Although Deimel objected to the reduction in commission, in March, 1978 he renewed the policy with the insured group at a 25% increase in premium, and received a 5% commission, in accordance with Conger’s December, 1977 notice, until June, 1979 when the policy was cancelled by Conger for non-payment of premium. Conger refused Deimel’s continued demands for payment of an additional 5% in commissions, which led to the filing of this lawsuit on January 15, 1981. At the conclusion of a non-jury trial the court announced:
Mr. Deimel never assented to it. [Reduction of the commission]. He objected to it. It was not a mutual agreement and they continued to serve his group and that but for the problem with, the statute of frauds, and I’m not ruling on that at the moment, the Court finds that Mr. Deimel would be entitled to a ten percent commission for as long as they renewed that policy with the group obtained by him....
Conger argues that if the agreement constitutes a single indivisible contract, enforcement is barred by operation of the statute of frauds or for lack of mutuality of obligation. Alternatively Conger contends that if the agreement contemplated a series of divisible contracts, then Conger had the right to unilaterally withdraw its offer to pay a 10% commission upon notice and substitute a 5% commission on all future placements or renewals.
After considering memoranda of law submitted by the parties the trial court ruled that the statute of frauds, Section 725.01, Florida Statutes (1981), was no bar to enforcement of the agreement, obviously because the original agreement contemplated a series of annual contracts renewable at the option of the parties. We agree with that determination. See Rothman v. Gold Master Corp., 287 So.2d 735 (Fla. 3d DCA 1974); Grossman v. Levy’s, 81 So.2d 752 (Fla.1955) (the oral renewal for one year of a one-year oral contract of employment, performance of which was to, and did, commence on the day renewal was entered into, is not within the statute of frauds).[2]
The only remaining question is whether Conger could, even with advance *1118 notice to Deimel, renew the 1978 contract on terms different from those of the prior years’ contracts. We believe so, since such a renewal on different terms is quite consistent with Conger’s right not to renew the policy and the commission agreement — a right which is conceded by Deimel. Conger cites the Restatement (Second) of Contracts (1981), for the applicable rule:
§ 47. Revocation of Divisible Offer.
An offer contemplating a series of independent contracts by separate acceptances may be effectively revoked so as to terminate the power to create future contracts, though one or more of the proposed contracts have already been formed by the offeree’s acceptance.
Conger’s December, 1977 communication to Deimel was an offer to renew the 1978 contract on different terms, which Deimel evidently understood to be just that, as he admittedly began an unsuccessful search for some other carrier which would provide more favorable terms and be acceptable to the insured group. Although voicing an objection to the reduced commission (apparently not to the increased premium), Deimel renewed the policy on the terms offered by Conger, and continued to perform according to those terms through the contract year, and into a second year, by collecting the 25% increased premiums and accepting the 5% commission. His full performance (speaking louder than his contradicting voice) constituted acceptance of Conger’s new offer, see Koppers Co. v. Kaiser Aluminum & Chemical Corp., 9 N.C.App. 118, 175 S.E.2d 761, 767 (Ct.App.1970) citing 17 C.J.S. Contracts § 41d (1963) and the agreement thus formed cannot now be set aside in reliance on prior contracts which were effectively revoked.
We are cognizant of the principle of law that when an offeree expressly states that he will not agree to the terms of the offer, no agreement can be inferred from his act of performance. Lamson Consolidated Store-Service Co. v. Weil, 15 Daly 498, 8 N.Y.S. 336 (Common Pleas 1890). But we view Deimel’s objections to the new offer as a mere expression of dissatisfaction while he continued to perform according to the new offer. Such objections did not make his acceptance conditional, nor did they constitute a counter-offer. See Foster v. West Publishing Co., 77 Okl. 114, 186 P. 1083 (1920). Conger’s new offer to Deimel was unequivocal, and after an unsuccessful attempt to find another carrier, Deimel acquiesced to the new terms.
We would reject the non-acceptance theory for another reason. A proposal must be accepted or rejected as a whole, and cannot be accepted as to part and rejected as to part without the consent of the offeror. See Lamonica v. Bosenberg, 73 N.M. 452, 389 P.2d 216 (1964). Here, the new offer consisted of both an increase in premium cost and a reduction in commission rate. Deimel produced no evidence tending to show that the offeror relented as to either part of the new offer.
Reversed and remanded with instructions to enter judgment for the appellant.

. The insured group is not a party to the proceedings.

. If, on the other hand, we were to disagree with the court’s finding and determine that the agreement constitutes a single indivisible contract not capable of performance within one year, the statute of frauds would apply. See Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); see also Food Fair Stores, Inc. v. Vanguard Investments Co. Ltd., 298 So.2d 515 (Fla. 3d DCA 1974) (evidence that oral agreement provided *1118 that any future stores of particular chain built at any future time would be operated jointly by the parties on the same basis as the initial store demonstrated that the contract could not be performed within one year, and thus came within the statute of frauds). The consequence of such a finding would still be unfavorable to Deimel since enforcement of the agreement, not in writing, would be precluded by operation of the statute of frauds. See Davis v. Ferraro, 303 So.2d 407 (Fla. 3d DCA 1974) and cases cited therein.