CUSTOM MOLDERS, INC. v. ROPER CORPORATION

No. 8814SC1423

(Filed 19 February 1991)

**1. Appeal and Error § 205 (NCI4th)— appeal filed same day written judgment filed—timeliness**

Defendant's appeal, filed the same day the written judgment was filed, was timely, since no judgment had been entered in open court when the verdict was received because the court had to first determine whether judgment was going to be entered on the breach of contract or the unfair trade practices verdict; the parties stipulated that judgment could be entered later "out of session" and out of county and a hearing therefor was scheduled; at the hearing the court allowed plaintiff's motion for judgment on the unfair trade practices claim, but the parties and the court agreed that there had been no entry of judgment and there would be none until the attorneys' fee question was resolved; the judge subsequently mailed the

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)]

parties a letter stating that he had determined to assess attorneys' fees against defendant in a stated amount; and approximately five weeks later, the judge was again in the Durham Superior Court and signed the judgment at that time.

**Am Jur 2d, Appeal and Error §§ 302, 303.**

2. **Contracts § 142 (NCI4th); Uniform Commercial Code § 8 (NCI3d)— oral contract to purchase parts from plaintiff— sufficiency of evidence of existence of contract**

The jury's finding that defendant lawn mower manufacturer contracted to purchase all its requirements for specially designed footrest pads from plaintiff as long as quality parts were delivered at competitive prices was supported by competent evidence, including an admission taken from an answer to plaintiff's amended complaint that defendant filed in U.S. District Court while the case was temporarily there, testimony as to oral agreements, and testimony as to the course of conduct between the parties; none of the evidence was barred by the parol evidence rule because the evidence did not show that any document or documents signed by the parties contained all the terms that were agreed to; and none of the evidence was barred by the U.C.C. because under it a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct which indicates the existence of such a contract.

**Am Jur 2d, Sales §§ 74-77, 317, 319.**

3. **Unfair Competition § 1 (NCI3d)— contract to purchase specially designed part from plaintiff—business given to another supplier—unfair and deceptive trade practice**

Evidence of defendant's deceit in promising to buy all its requirements for specially designed footrest pads from plaintiff and then secretly giving its business to another supplier was sufficient to support the trial court's conclusion that defendant committed an unfair and deceptive trade practice.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

**4. Attorneys at Law § 64 (NCI4th) — unfair and deceptive trade practice — award of attorney fees proper**

There was no merit to defendant's contention that the trial court erred in awarding plaintiff attorney fees because there was no showing that defendant willfully engaged in the forbidden practice and that its refusal to settle the case was unwarranted.

**Am Jur 2d, Damages § 616.**

Judge WELLS concurring.

Judge PARKER dissenting.

APPEAL by defendant from judgment and order entered 26 May 1988 and by plaintiff from order entered 8 December 1988 by *Judge J. Milton Read, Jr.* in DURHAM County Superior Court. Heard in the Court of Appeals 24 August 1989.

Defendant's appeal is from the judgment entered against it following the trial of this action for breach of contract and unfair trade practices. Plaintiff's appeal is from the denial of its motion to dismiss defendant's appeal.

In pertinent part, when viewed in its most favorable light for plaintiff, the evidence presented at trial tends to show the following: At its Orangeburg, S. C. plant defendant, an Illinois corporation, was manufacturing riding lawn mowers which Sears Roebuck & Company marketed under its Craftsman label. For several years at its Durham, N. C. manufacturing and research facility plaintiff, a North Carolina corporation, had been producing high quality plastic parts of various kinds for IBM, Ford Motor Company, General Motors and other large corporations. In the spring of 1984 defendant was redesigning its riding lawn mower and was under pressure from Sears to get it into production in time for the approaching winter retail shopping season. One holdup to production was that defendant had been trying without success to develop a plastic footrest pad for the machine that looked like rubber and would stick to the metal surface of the lawn mower. After learning of plaintiff's extensive experience in developing and producing plastic parts and adhesives one of defendant's executives in Chicago contacted plaintiff in Durham about developing and producing such a pad for it in time for deliveries to be made to Sears in the fall. Before plaintiff or any other plastics manufacturer could

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)]

produce plastic parts of the same dimensions and fitness by injection molding, a process used by the industry, a mold to manufacture the parts had to be designed and manufactured at considerable cost in both time and money; and plaintiff indicated that it could and would develop and produce the pads defendant desired within Sears' deadline if defendant agreed, in pertinent part, to buy from it all the pads so designed that it thereafter needed if plaintiff timely delivered pads of good quality and met the price of competitors after receiving notice of lower bids. Following additional discussions, correspondence and telephone conversations between executives for the parties, plaintiff's terms were orally agreed to, and plaintiff designed and manufactured the mold and footrest pads needed to get defendant's lawn mower in production that fall and continued to provide defendant with high quality parts for its lawn mowers until October, 1985. At that time, without giving plaintiff an opportunity to meet a competitor's lower bid, defendant terminated the agreement and began buying pads from another supplier at a lower price.

Plaintiff sued for breach of contract, and based upon information elicited during discovery was later permitted to file an amended complaint alleging, *inter alia*, a claim for unfair and deceptive trade practices under G.S. 75-1.1 in that defendant deceitfully induced plaintiff to meet its emergent needs by agreeing to buy all its requirements for footpads so developed from plaintiff when it intended not to abide by the agreement. No answer to these allegations by defendant is in the record that defendant filed here. In the trial, following their consideration of evidence that supported all the issues submitted, the jury found as follows:

Defendant contracted to purchase its total requirements for footrest pads from the plaintiff.

Defendant breached that contract.

Because of the breach plaintiff has been damaged in the amount of $249,016.

None of the damages so sustained could have been avoided by plaintiff.

Defendant, by and through its employees and agents, represented to plaintiff that it would purchase its total requirements for footrest pads from plaintiff in order to obtain research and development labor and timely production of parts

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)]

from plaintiff when it did not intend to be bound by its representation.

Defendant, by and through its employees and agents, acted in bad faith in ending its contract with plaintiff.

Plaintiff was injured as a proximate result of defendant's conduct in the amount of $249,016.

None of plaintiff's damages could have been avoided by plaintiff.

Plaintiff elected to forego recovery on the breach of contract claim and moved for judgment on the unfair and deceptive practices claim. Following a hearing and other developments mentioned below, the court, after finding and concluding that defendant's actions were unfair ·and deceptive under G.S. 75-1.1, trebled plaintiff's damages, and entered judgment against defendant for $747,048 together with interest as allowed by law and attorneys' fees in the amount of $49,000.

*Michael D. Calhoun; Glenn, Bentley & Fisher, P.A., by Charles A. Bentley, Jr. and Robert B. Glenn, Jr.; and General Counsel Susie R. Powell, for plaintiff appellant-appellee.*

*Poyner & Spruill, by J. Phil Carlton and Mary Beth Johnston; and Faison & Brown, by Charles Gordon Brown and M. LeAnn Nease, for defendant appellee-appellant.*

PHILLIPS, Judge.

## PLAINTIFF'S APPEAL

[1] Since plaintiff's appeal challenges the validity of defendant's appeal, we determine it first. Plaintiff's contention that defendant's notice of appeal, filed the same day the written judgment was filed, was not timely is based upon the premise that entry of judgment was made "in open court" several weeks earlier. The existence or absence of the premise determines the appeal; for under the provisions of Rule 58, N.C. Rules of Civil Procedure, and our Appellate Rule 3 the time for appealing a judgment entered "in open court" starts when the entry is made, whereas, the time for appealing judgments not entered in open court does not begin until the written judgment is filed and the parties are notified. The record establishes that the judgment was not entered in open court and defendant's appeal was timely.

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)].

The record shows, in pertinent part, the following: On 1 March 1988 when the verdict was received in open court judgment was not entered since the court had to first determine whether judgment was going to be entered on the breach of contract or the unfair trade practices verdict, and the parties stipulated that judgment could be entered later "out of session" and out of county, and a hearing therefor was scheduled for 21 March 1988. At the scheduled hearing the court allowed plaintiff's motion for judgment on the unfair trade practices verdict and trebled the damages found by the jury, but the court did not rule on plaintiff's motion for attorneys' fees because the hearing ended before defendant's evidence on that issue was completed. The judge had to be elsewhere during the next few weeks and the parties and court agreed that: The issue would be resolved without a further hearing, defendant had until 30 March 1988 within which to mail affidavits and a brief to the judge, and when he determined the matter he would notify the parties either by mail or telephone. During the interchange between counsel and the court it was expressly stated that there had been no entry of judgment and there would be none before the attorneys' fee question was resolved, lest the issue be left in limbo pending the appeal. On 18 April 1988, after defendant's affidavits and brief had been received and considered, the trial judge mailed the parties a letter stating that he had determined to assess attorneys' fees against defendant in the amount of $49,000, and the original of the letter, received by the clerk that day, was filed in the case file. On 26 May 1988 the trial judge was again in the Durham County Superior Court, and signed the judgment at that time.

The foregoing circumstances establish quite plainly that judgment was not entered in the case until the written judgment was filed and that defendant's notice of appeal was not untimely. The argument that entry of judgment was made at the 21 March hearing when the judge determined to enter judgment on the unfair trade practices claim overlooks the court's statement and actions to the contrary. The further argument that entry was made upon the clerk receiving the judge's letter stating that the attorneys' fee issue had been decided is irrelevant; for even if the receipt of the letter by the clerk constituted an entry of judgment, and we do not hold that it was, it was not an entry made in "open court." Under the rules referred to, an "open court" is a court presided over by an authorized member of the judiciary and that, in the

words of the crier, "is open for the dispatch of business." The court that had jurisdiction of this matter was not in session; no judge authorized to preside over it and supervise the dispatch of its business was present. Thus, the order denying plaintiff's motion to dismiss the appeal was correct and we affirm it.

DEFENDANT'S APPEAL

[2] The main question raised by this appeal is whether the jury's finding that defendant contracted to purchase all its requirements for the specially designed footrest pads from plaintiff as long as quality parts were delivered at competitive prices is supported by competent evidence. In overruling defendant's argument that the finding is not so supported, it is unnecessary to state all of the supporting evidence that the 1,500 transcript pages contain. One thing contained is the following admission, taken from an answer to plaintiff's amended complaint that defendant filed in the United States District Court for the Middle District of North Carolina while the case was temporarily there:

> Defendant admits that in 1984 the parties entered into a contract pursuant to terms which the Plaintiff agreed to manufacture, sell, and ship to the Defendant all of the requirements of the Defendant for various goods (including "pad-footrests") and that the Defendant agreed that it would accept delivery of all conforming parts required by it and that the Defendant would pay to the Plaintiff for each part required by the Defendant as shipped to it in a conforming manner . . . .

Much other evidence indicates that the parties orally agreed to a life of the part contract and did not agree to written provisions to the contrary, including the fine print provisions on the back of defendant's purchase order form that purported to authorize defendant to cancel the contract at will and without penalty. Included is evidence that indicates, *inter alia*, that: From the outset plaintiff made plain to defendant both orally and in writing that before undertaking to design and produce the footrest pads, defendant's commitment to buy the parts so designed and produced from it as long as quality parts were timely delivered at competitive prices had to be received; that defendant knew that the conditions insisted upon by plaintiff were customarily required by other plastics manufacturers and defendant gave the manufacturer it got to replace plaintiff substantially the same parts contract that plaintiff demanded; that on several occasions defendant's executives assured plain-

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)]

tiff that its conditions would be met if plaintiff proceeded with the project and when a form committing defendant to the terms discussed was not signed and returned as plaintiff requested, defendant's executives assured plaintiff that the form was being reviewed by defendant's legal department and it would be signed in due course; defendant's negotiations with plaintiff as to tooling costs, parts specifications and prices were conducted mostly by telephone and the terms were often complied with before written confirmation was received; and after the arrangement between the parties had continued for a year or more and defendant had secretly transferred the business to a competing supplier, its executive told plaintiff that it would have to reduce its prices if it was to keep the business.

Contrary to defendant's arguments, none of the foregoing evidence was barred by either the parol evidence rule or the Uniform Commercial Code. None of it was barred by the parol evidence rule because the evidence does not show that any document or documents signed by the parties contained all the terms that were agreed to. None of it was barred by the Code because under it a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct that indicates the existence of such a contract. G.S. 25-2-204(1); *Carolina Builders Corporation v. Howard-Veasey Homes, Inc.*, 72 N.C.App. 224, 324 S.E.2d 626, *disc. review denied*, 313 N.C. 597, 330 S.E.2d 606 (1985). Conduct that indicates the existence of their oral contract includes plaintiff's development and manufacture of the mold for defendant's parts after repeatedly saying it would do so only upon defendant's assurance that it would not take the business from plaintiff as long as quality parts were timely delivered at competitive prices; defendant's request that plaintiff devote time and money to its needs knowing plaintiff's expectation that defendant would not summarily and without reason drop plaintiff as a supplier and knowing also that other plastic manufacturers would have the same expectation; defendant's payment of $20,000 for tooling costs that plaintiff required; defendant's telephone requests for quotations and its continued orders for and acceptance of parts; that neither party stood idle awaiting written confirmation of what had been orally stated, but continued to produce, deliver, accept and pay without any signed agreement; and pretending to seek a cost reduction under the contract after having secretly given the business to another supplier.

Nor, as defendant argues, was the contract invalid because it was for all of defendant's footrest pad requirements and not in writing. For the pads, with Sears' "Craftsman" label on them, were specially made for defendant and could not be sold to anyone else, and G.S. 25-2-201(3)(a) provides that contracts for the sale of such specially manufactured goods do not have to be in writing.

[3] Defendant's other major arguments are that the evidence and the jury's findings do not support the court's conclusion that defendant committed an unfair and deceptive trade practice in violation of G.S. 75-1, *et seq*. The arguments for the most part do not address the real issue presented. For their thrust is that a mere promissory representation, a mere breach of contract, a mere change of suppliers, etc., is not an unfair or deceptive trade practice under the law, whereas the judgment is based upon deceit which is universally regarded as an unfair and deceptive trade practice. In *Process Components, Inc. v. Baltimore Aircoil Co., Inc.*, 89 N.C. App. 649, 366 S.E.2d 907, *aff'd per curiam*, 323 N.C. 620, 374 S.E.2d 116 (1988), we held that falsely promising to give plaintiff all of its parts business in the Carolinas and an exclusive distributorship was an unfair and deceptive trade practice in violation of Chapter 75. Defendant's deceit in this case, as found by the jury, was just as unfair and deceptive as that of the defendant in that case.

[4] Nor, as defendant argues, did the court err in awarding plaintiff attorney fees. G.S. 75-16.1 authorized the court to award attorney fees upon findings that defendant willfully engaged in the forbidden practice and that its refusal to settle the case was unwarranted. Despite the jury's finding that defendant deceitfully induced plaintiff into doing research and development for it when it did not intend to keep the promises made, defendant vainly argues that its willfulness has not been shown. As to the finding that its refusal to settle was unwarranted, defendant argues that it has no evidentiary support because plaintiff's only settlement offers were for $324,000 and $275,000, whereas the jury awarded only $249,016, and refusing to settle for more than the jury awarded is not an unwarranted refusal. This argument overlooks two things: First, that on 4 October 1985 before litigation was begun plaintiff offered to settle the entire matter if defendant would merely permit it to manufacture the 74,145 pieces of defendant's part that were ordered on 28 August 1985; second, that the jury's findings of calculated, intentional deceit and bad faith on defendant's part established that defendant knew from the beginning, even if plain-

CUSTOM MOLDERS, INC. v. ROPER CORP.

[101 N.C. App. 606 (1991)]

tiff did not, that it was sitting on or defending an unfair and deceptive trade practice case in which the damages could be trebled. Under the circumstances we cannot say that the court's finding that defendant's refusal to settle was unwarranted is without evidentiary support.

Defendant's other arguments as to the admissibility of evidence, the issues submitted, and the court's instructions have been considered and also found to be without merit.

As to plaintiff's appeal — affirmed.

As to defendant's appeal — no error.

Judge WELLS concurs with separate opinion.

Judge PARKER dissents.

Judge WELLS concurring.

In the breach of contract context, the dispositive issue in this case is whether plaintiff should have been allowed to rely on the oral representations of defendant's employees pertaining to an all-requirements, life-of-the-part commitment, or, whether plaintiff was limited to the written terms of defendant's purchase orders. I am of the opinion that under the provisions of our Uniform Commercial Code, G.S. 25-2-202, plaintiff was not confined to the written terms of the purchase orders.

As to the Unfair Trade Practices claim, if there was evidence from which the jury could reasonably infer that defendant represented to plaintiff that it would give plaintiff all of its footpad business for the Craftsman mower, but never intended to abide by that promise, then this issue was correctly resolved in plaintiff's favor. Although the evidence on this point was only circumstantial, it appears to me that the dealings between these parties over the course of their relationship would allow that inference.

Judge PARKER dissenting.

I respectfully dissent. In my view the trial court should have directed verdict for defendant on the unfair and deceptive trade practices claim. The majority opinion points to no evidence to support a finding that defendant did not intend to purchase all its

footrests requirements from plaintiff at the time the agreement was made. To the contrary the evidence is undisputed that defendant in fact placed orders for August 1984 through September 1985 with plaintiff, and there is no evidence that these orders were not the full requirements for this period. During this period plaintiff implemented a price increase to which defendant agreed. Defendant cancelled the purchase order for the period 1 August 1985 through 31 July 1986 because it had found another supplier who could sell the footrests for $.30 less per pad.

Moreover, the purchase orders are the only paper writings in this record which can satisfy a written contract for purposes of N.C.G.S. § 75-4 requiring that all contracts which limit "the rights of any person to do business anywhere in the State of North Carolina" be in writing. These purchase orders were for the periods 1 August 1984 through 31 July 1985 and 1 August 1985 through 31 July 1986. The purchase orders are sufficient to satisfy the requirements under the Uniform Commercial Code for a contract for the sale of goods, N.C.G.S. §§ 25-2-204 and -207, and to satisfy the requirement for a written contract under N.C.G.S. § 75-4 for a period of one year, but not for the life of the part. Plaintiff's contention is that defendant entered into an oral requirements contract for the life of the part with no intention of fulfilling the contract as evidenced by defendant's contracting with a different supplier after plaintiff increased the price per unit. Plaintiff, therefore, is in essence seeking the benefit of an invalid oral requirements contract for the life of the part to sustain an unfair and deceptive trade practice.

Finally, under N.C.G.S. § 75-1.1, an act is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), and it is deceptive if it "has the capacity or tendency to deceive," *id.* at 265, 266 S.E.2d at 622. Not every breach of contract constitutes an unfair or deceptive trade practice. *See, e.g., Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) ("A simple breach of contract, even if intentional, does not amount to ·a violation of [N.C.G.S. § 75-1.1]; a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act . . . ."). Plaintiff's evidence showed that custom and practice in the plastics industry was to demand a life of the part requirements contract so long as the price remained competitive. This life of the part requirement has the potential

to chill the ability to obtain a competitive bid. Under this circumstance I cannot conclude as a matter of law that a purchaser is deceptive, unscrupulous, unethical, or oppressive for looking elsewhere for a more cost efficient supplier when the existing one has raised prices.

Under the evidence in this case, defendant is at most liable for breaching the 1 August 1985 through 31 July 1986 contract. Accordingly, I vote to vacate the judgment for unfair and deceptive trade practices including attorney's fees and to remand for a determination of damages for breach of the 1 August 1985 through 31 July 1986 contract.